## Kuna v. Lake Sheridan Cottagers Association

*Jeffrey Kornblau* and *Gary Solomon,* for plaintiff.
*Patrick J. Boland,* for defendants Strazewski.
*Brett J. Southard,* for defendants Davis.
*Charles C. Calkins,* for defendant McLaughlin.
*John K. Baker,* for defendants Lake Sheridan Cottagers Association.
*James A. Doherty,* for defendants Konopka.

MINORA, *J.,* October 24, 2007—This court was presented with several motions in limine and a motion for summary judgment by the parties to this action. Hearing was held before this court on September 28, 2007, during which time this court ruled on a number of issues presented. This court elected to reserve on the following motions:

(1) Plaintiff's motion in limine to preclude evidence of alcohol consumption and/or bood alcohol level

(2) Plaintiff's motion in limine to preclude evidence that plaintiff was a trespasser

(3) Defendant, the late Shirley McLaughhn's, pretrial motion to exclude testimony regarding statements purported to be made or not made by defendant, the late Shirley McLaughlin,[1] pursuant to 42 Pa.C.S. §5930 (surviving party as a witness)

(4) Defendant Shirley McLaughlin's motion for summary judgment

These matters are now ripe for disposition.

## I. PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ALCOHOL CONSUMPTION AND/OR BLOOD ALCOHOL LEVEL

In plaintiff's motion in limine to preclude evidence of alcohol consumption and/or blood alcohol level, plaintiff argues against admission of evidence regarding alcohol consumption and/or blood alcohol level based on the anticipation that defendants will attempt to establish that alcohol intake contributed to the accident. Plaintiff, however, contends that there is no evidence of corroborating intoxication in the form of "slurred speech, or stumbling, and accordingly, evidence that plaintiff had any alcohol at the party is properly precluded." See motion in limine of plaintiff at 2.

Plaintiff argues that his blood alcohol content is not admissible because there is a lack of corroborating evidence of intoxication. Case law precludes the admis-

---

1. Now deceased. Counsel for the late Shirley McLaughlin indicated in defendant McLaughlin's pretrial motion, discussed *infra,* that the caption would be amended in the near future. To date, this court has not been formally advised of such amendment.

sion of blood-alcohol content in the absence of such corroborating evidence. Defendants argue that plaintiff's testimony demonstrates that he was drinking alcohol on the night before and day of the accident. In addition, a fellow party invitee who assisted plaintiff while in the lake immediately following the accident testified that she smelled alcohol when assisting the plaintiff.

The standard for determining whether consumption of alcohol is admissible was provided in *Whyte v. Robinson,* 421 Pa. Super. 33, 39, 617 A.2d 380, 383 (1992):

"Since *Critzer v. Donovan,* 289 Pa. 381, 137 A.2d 665 (1927), the well-settled law of this Commonwealth is that where recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial, unless it reasonably establishes intoxication. *Cusatis v. Reichert,* 267 Pa. Super. 247, 249-50, 406 A.2d 787, 788-89 (1979) and cases cited therein. The rule of *Morreale v. Prince,* 436 Pa. 51, 53, 258 A.2d 508 (1969), states that such evidence of intoxication must reasonably establish a degree of intoxication which proves unfitness to drive where recklessness or careless driving is the matter at issue. This court, in *Kriner v. McDonald,* 223 Pa. Super. 531, 533-35, 302 A.2d 392, 394 (1973) extended the *Critzer/Morreale* rules of inadmissibility to evidence tending to establish intoxication on the part of a pedestrian. According to *Kriner,* such evidence of intoxication is inadmissible unless it proves unfitness to be crossing the street. Furthermore, no reference should be made to a pedestrian's use of alcohol unless there is evidence of excessive or copious drinking. *Cook v. Philadelphia*

*Transportation Company,* 414 Pa. 154, 158, 199 A.2d 446, 448 (1964)."

In *Whyte,* the appellant asked the court to examine whether evidence of alcohol consumption was improperly admitted during a trial after the jury returned its verdict. The evidence of intoxication introduced to the jury consisted of testimony from one person at the scene of the accident who caught a whiff of alcohol on appellant's breath. The court, using the standard set forth *supra,* found that "the evidence of appellant's intoxication was both insufficient and incompetent." *Id.* at 36, 617 A.2d at 382. The court stated:

"Applying *McKee* [*by McKee v. Evans,* 380 Pa. Super. 120, 551 A.2d 260 (1988)] to the facts herein, we are mindful that none of the defense witnesses, who opined Whyte was drunk, observed Whyte prior to the accident. *Moreover, the record is devoid of any evidence such as staggering, stumbling, aimless wandering, glassy eyes or incoherent mumbling.* See *e.g., Ackerman v. Delcomico,* 336 Pa. Super. 569, 486 A.2d 410 (1984) (corroborated testimony that a party had been heavily drinking prior to accident, whose breath emitted a strong odor of beer, whose speech was slurred and whose alertness was unusually low after the accident was held to be much more than a suggestion of intoxication and was properly admitted into evidence); *Hannon v. City of Philadelphia,* 138 Pa. Commw. 166, 587 A.2d 845 (1991) (holding that the combined evidence of an admission to drinking more than a six-pack of beer, the use of abusive and foul language, screaming, loud and uncooperative behavior, smell of alcohol, incoherence and rambling, repeatedly ripping off a cervical collar after being warned of the

dire consequences, and slurred speech was admissible). The tension in this case is between the relevance of the evidence and its prejudicial effects. *We conclude, therefore, that even if remotely helpful, the lay opinion of Robinson and his companions as to Whyte's intoxication was manifestly prejudicial and should not have been admitted into evidence." Id.* at 41, 617 A.2d at 384. (emphasis added)

We note the list of symptoms of intoxication provided by the Superior Court is not exclusive to those provided here, as the list begins with the phrase "such as."

In *Morreale v. Prince,* 436 Pa. 51, 258 A.2d 508 (1969), the court determined that evidence of a person having been in an after hours club, without evidence that the person had consumed alcohol, was determined to be "unduly prejudicial."

The Pennsylvania Superior Court provided analysis on the admissibility of evidence of intoxication and blood alcohol content in *Ackerman v. Delcomico,* 336 Pa. Super. 569, 486 A.2d 410 (1984). The *Ackerman* case concerned a pedestrian who had been hit by a car. The pedestrian/appellant challenged the decision of the court of common pleas to admit evidence of the pedestrian's intoxication. The sole parties at the accident scene were the pedestrian, his girlfriend and the motorist. Notably, the court separately analyzed the issues of evidence of the pedestrian's intoxication and the admissibility of his blood alcohol content. On the issue of admissibility of the pedestrian's intoxication, the court stated:

"In the case at bar, there is evidence which could reasonably establish that appellant was intoxicated, so as to make it necessary to place before the jury the issue of

whether he was so influenced by alcohol to be a 'hazard.' *There was corroborated testimony that appellant had been drinking heavily in the late afternoon and evening before the accident. There is also corroborated testimony that appellant had a strong odor of alcohol and slurred speech after the accident. Looking at all the evidence, there is much more than a suggestion of intoxication and, therefore, we conclude that the evidence of appellant's intoxication was properly admitted, and was not prejudicial* as determined in *Morreale v. Prince,* 436 Pa. 51, 258 A.2d 508 (1969) and *Vignoli v. Standard Motor Freight Inc.,* 418 Pa. 214, 210 A.2d 271 (1965) (when carelessness or recklessness is at issue, mere fact of consuming alcohol not admissible, being unfairly prejudicial, unless it reasonably establishes intoxication)." *Id.* at 575, 486 A.2d at 413. (emphasis added)

On the issue of admissibility of blood alcohol content, the court stated:

"The theory behind allowing a blood alcohol level to be admitted into evidence in a civil case is that it is relevant circumstantial evidence relating to intoxication. However, *blood alcohol [content] alone may not be admitted for the purpose of proving intoxication.* There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted." *Id.* at 576, 486 A.2d at 414. (emphasis added)

In *Kraus v. Taylor,* 710 A.2d 1142 (Pa. Super. 1998),[2] appellant requested the Superior Court to review the

2. Appeal in this case was initially granted by the Pennsylvania Supreme Court at 556 Pa. 257, 727 A.2d 1109 (April 20, 1999). Later,

trial court's decision to admit evidence of appellant's blood alcohol content following the jury verdict against appellant. Appellant was injured after being hit by a vehicle owned by the defendant/appellee. Evidence of appellant's blood alcohol content at the time of the accident, in excess of 0.25 percent, was admitted into evidence. Appellant asked the court to revisit the decision to admit evidence of his blood alcohol content considered in light of cases in which an injured's blood alcohol content was not admissible.

The Superior Court's analysis on the issue provided in *Kraus,* is as follows:

"Consequently, no reference should be made to a pedestrian's use of alcohol *unless there is evidence of intoxication or copious drinking on the part of the pedestrian; for example evidence that the injured party was staggering or had liquor on his breath gives support to such an inference. Kriner,* 223 Pa. Super. at 533-34, 302 A.2d at 394. (emphasis added) (citations omitted) In *Whyte,* we simply applied the rule established by *Kriner.* See *Whyte,* 421 Pa. Super. at 38-40, 617 A.2d at 383. *Both cases turned on our conclusion that evidence of the pedestrian's intoxication was so insubstantial, and the potential prejudice so significant, that it was an abuse of discretion to admit the evidence.* See *Kriner,* 223 Pa. Super. at 533-35, 302 A.2d at 394; *Whyte,* 421 Pa. Super. at 43-44, 617 A.2d at 385. *In contrast, appellees in this case produced substantial*

at 560 Pa. 220, 743 A.2d 451 (January 20, 2000), the Pennsylvania Supreme Court dismissed the appeal as "having been improvidently granted."

*evidence of appellant's intoxication at the time of the accident. First, the responding officer testified that he scented alcohol on appellant's breath shortly after the accident. (N.T. 10/7/96, at 97.) Second, the hospital measured appellant's blood alcohol level in excess of 0.25 percent within 40 minutes of the accident. [FN2— Appellant's blood alcohol level would have been inadmissible absent the additional corroborating evidence. See Whyte, 421 Pa. Super. at 40-44, 617 A.2d at 384-85.] (N.T. 10/8/96, at 13-32.) Finally, appellees produced expert testimony that, given the blood test results, appellant's judgment and motor coordination would have been severely impaired at the time of the accident. (N.T. 10/8/96, at 23-37.)* The trial court did not abuse its discretion in admitting this substantial evidence of appellant's intoxication at the time of the accident." *Id.* at 1145-46. (emphasis added)

The Superior Court determined the corroborating evidence in this case was sufficient to be admitted on the issue of the pedestrian's intoxication and affirmed the lower court's denial of the pedestrian/appellant's post-trial motions.

More recently, the Commonwealth Court also examined this issue in *Lock v. City of Philadelphia,* 895 A.2d 660 (Pa. Commw. 2006). The court stated:

"In the instant case, the record contains substantial independent evidence corroborating the city's allegation that Lock was intoxicated at the time of the accident. Most compelling was Lock's own admission that he had consumed four or five beers during the previous evening. Lock's accident reconstruction expert also acknowledged that his blood alcohol content was 0.134 percent. Officer

Lindenmuth testified that when he arrived at the hospital approximately two hours after the accident, he detected a strong odor of alcoholic beverage on Lock's breath and observed that his eyes were glassy and his speech impaired. In light of these indicia of intoxication, we conclude that the trial court properly admitted evidence of Lock's alcohol consumption and his blood alcohol content." *Id.* at 666.

Sub judice, plaintiff asks this court to preclude evidence of his alcohol consumption or blood alcohol content from being admitted at trial. However, defendants indicate that factors exist to meet the elements of admissibility as set forth in *Kraus* and *Lock, supra.* Namely, defendants underscore testimony of Courtney Homenchak, who assisted the plaintiff in the lake immediately after the accident, and her statement that she smelled alcohol on plaintiff's breath when responding to the accident. See brief of Davis defendants in opposition to plaintiff's motion in limine at 3; supplemental brief of defendants Joseph and Sophie Strazewski at 6. This alone would not be sufficient. Defendants also argue that plaintiff's hospital records indicate his heightened blood alcohol level upon admission to the hospital. See brief of Davis defendants in opposition to plaintiff's motion in limine at 1-3; supplemental brief of defendants Joseph and Sophie Strazewski at 5-6. In addition, at the September 28, 2007 hearing on pretrial motions submitted by the parties, this court ruled that defendants' forensic experts, Isidore Mihalakis M.D. and Gary W. Ross M.D., were permitted to testify on matters within the four corners of their expert reports within their areas of expertise. The expert report of Dr. Mihalakis states, in part:

"His [plaintiff's] sense of caution, care, mental stability and vision were compromised due to his alcoholic intoxication. If at 7:44 p.m. (when the medical alcohol determination was drawn) his alcohol level was 207 mg/dL (which translates into a 0.178 percent legal whole-blood alcohol), then three hours earlier (action occurred shortly before 5 p.m. and blood was drawn at 7:44 p.m.) his legal (whole-blood) alcohol level would have been 0.232 percent. At that blood alcohol concentration, there is confusion, emotional instability, and loss of critical judgment, poor muscular coordination and delayed reaction time . . . ." See report of defense expert Isidore Mihalakis M.D. at ¶3.

The expert report of Dr. Ross states, in part:

"A drink, commonly 12 ounces of beer, 4 ounces of nonfortified wine or 1.5 ounces of 80 proof liquor, each contain approximately 10 grams of ethanol. On average a 175 lb. male has an approximate 20 mg/dL increase in his blood alcohol concentration for each drink he consumes. A blood alcohol concentration of 207 mg/dL conservatively reflects an ethanol consumption of at least 10-11 drinks." See report of defense expert Gary W. Ross M.D. at page 1.

These reports opine that plaintiff's judgment was affected given the alcohol concentration in his blood. We find all of these factors considered together similar to those deemed sufficient to satisfy the requirements of *Kraus, supra.* Plaintiff's motion in limine to preclude evidence of any and all alcohol consumption and/or blood alcohol level is therefore denied.

## II. PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE EVIDENCE AND ARGUMENT THAT KEVIN KUNA WAS A TRESPASSER OR NEEDED PERMISSION TO USE THE DOCK AT THE TIME OF THE INCIDENT

In support of plaintiff's motion in limine seeking to bar evidence that he was a trespasser or needed permission to use the dock, plaintiff argues that he was a guest at the party. Further, he argues while the dock was owned by the Strazewskis and Konopkas, any of the cottage owners or their guests had permission to use the dock. By virtue of the fact he was a guest, plaintiff takes the position that he was permitted to use the dock. Plaintiff supplements this argument by citing deposition testimony of Mr. Strazewski, who testified that he saw guests from the party go out to the dock, but he did not chase them away.

Conversely, defendants argue that the evidence is not sufficiently clear that plaintiff had permission to use the dock, therefore the "absolute preclusion" of all evidence on this issue is improper.

As stated in *Trude v. Martin,* 442 Pa. Super. 614, 624, 660 A.2d 626, 630 (1995):

"The standard of care which a possessor of land owes to an entrant upon the land depends upon whether the entrant is a trespasser, licensee or business invitee. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983); see also, Restatement (Second) of Torts §§328-344 (1965). *Generally, the determination of whether an individual is a trespasser, licensee or invitee is one of fact for the jury. Palange v. City of Philadelphia, Law Department,* 433

Pa. Super. 373, 640 A.2d 1305 (1994)." (emphasis added)

The issue of whether plaintiff was a trespasser is an issue of fact that is appropriately presented to the jury. Plaintiff's motion in limine to preclude evidence that he was a trespasser at the time of the accident or needed permission to use the dock in question is denied.

## III. DEFENDANT SHIRLEY McLAUGHLIN'S PRETRIAL MOTION TO EXCLUD TESTIMONY REGARDING STATEMENTS PURPORTEDLY MADE OR NOT MADE BY DEFENDANT SHIRLEY McLAUGHLIN PURSUANT TO 42 Pa.C.S. §5930 (SURVIVING PARTY AS A WITNESS)

On behalf of defendant Shirley McLaughlin, now deceased, counsel argues that the Dead Man's Act applies. 42 Pa.C.S. §5930. The statute provides, in part:

"Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy . . . ."

In *Olson v. North American Industrial Supply Inc.,* 441 Pa. Super. 598, 658 A.2d 358 (1995), the Superior Court

provided the three criteria for determining if a witness is incompetent for testifying under the Dead Man's Act. The court stated:

> · Before a witness is declared incompetent to testify under the Dead Man's Act, three conditions must exist: (1) the deceased must have had an actual right or interest in the matter at issue; (2) the interest of the witness, not simply the testimony, must be adverse to that of the decedent; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest. *Commonwealth v. DiCio,* 218 Pa. Super. 268, 270, 275 A.2d 868, 870 (1971)." *Id.* at 610, 658 A.2d at 364.

Defendant would have us ignore other events that occurred within the course of this litigation that affect whether other parties are incompetent to testify. However, in citing *Olson,* defendant seems to have overlooked an additional explanation provided by the court pertaining to waiver under the Dead Man's Act:

> "The Dead Man's Act exists for the protection of the dead man's estate; however, the representative of the estate may elect to waive the disqualification of the adverse party by taking his deposition or requesting a response to written interrogatories pursuant to the discovery rules found in the Pennsylvania Rules of Civil Procedure. See Pa.R.C.P. 4004, 4005 and 4007.1. *Flagship First National Bank of Miami Beach v. Bloom,* 288 Pa. Super. 347, 353, 431 A.2d 1082, 1085 (1981); *Perlis v. Kuhns,* 202 Pa. Super. 80, 82, 195 A.2d 156, 158 (1963) (if a decedent's representative requires the adverse party to submit to a deposition or respond to written interrogatories, this amounts to a waiver of the Dead Man's

Act). Furthermore: [W]hen a claimant against the estate of a decedent testifies in his own behalf as to facts occurring since the death of the decedent and is cross-examined as to matters occurring during the decedent's lifetime, the disability imposed by the act is lifted, and the claimant becomes competent to testify to all relevant and material matters. *Estate of Kofsky,* 487 Pa. 473, 476, 409 A.2d 1358, 1359 (1979)." *Id.* at 610-11, 658 A.2d at 365.

More recently, in *Schroeder v. Jaquiss,* 580 Pa. 381, 388, 861 A.2d 885, 889 (2004), the Pennsylvania Supreme Court noted:

"It [the Dead Man's Act] provides that when a decedent before he died or a decedents [sic] representative has required an adverse party to be deposed or to answer interrogatories, any objection based upon the Dead Man's Act to the competency of such a party to testify at the trial is waived, even though discovery is not offered in evidence." (citations omitted)

In *Schroeder,* however, the court limited an absolute application of the Dead Man's Act by providing that waiver of the Dead Man's Act does not apply to discovery not conducted by the party asserting the privilege: "Therefore, because the estate [the party asserting the Dead Man's Act] refrained from engaging in such discovery, the *Anderson* waiver principle was not implicated." *Id.* at 389-90, 861 A.2d at 890.

Plaintiff's brief in response to defendant's motion in limine argues that defendant McLaughlin waived the protection of the Dead Man's Act because defendant McLaughlin noticed plaintiff's deposition and conducted plaintiff's deposition. See plaintiff's brief in opposi-

tion to defendant McLaughlin's pretrial motion to exclude statements made or not made by defendant Shirley McLaughlin at 3. Plaintiff's deposition was taken on February 22, 2002. Shirley McLaughlin passed away on March 5, 2002. Counsel for defendant McLaughlin attended the deposition and questioned the plaintiff. This constitutes a waiver of the Dead Man's Act under *Olson v. North American Industrial Supply Inc., supra,* at least to the plaintiff. Defendant's pretrial motion to exclude testimony regarding statements purported to be made or not made by defendant Shirley McLaughlin pursuant to 42 Pa.C.S. §5930 is therefore denied.

## IV. DEFENDANT SHIRLEY McLAUGHLIN'S MOTION FOR SUMMARY JUDGMENT

The standard for evaluating motions for summary judgment is provided in Pa.R.C.P. 1035.2:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or export report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

As stated recently by the Pennsylvania Supreme Court in *Toy v. Metropolitan Life Insurance Co.,* 593 Pa. 20, 33-34, 928 A.2d 186, 194-95 (2007):

"The Pennsylvania Rules of Civil Procedure that govern summary judgment instruct in relevant part, that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense *that could be established by additional discovery.* Pa.R.C.P. 1035.2(1). Under the rules, a motion for *summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law.* Note to Pa.R.C.P. 1035.2. (footnote omitted) In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. SEPTA,* 565 Pa. 211, 772 A.2d 435, 438 (2001). Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205, 206 (1991)." (emphasis added)

Defendant, the late Shirley McLaughlin, argues that negligence is the sole cause of action against her in this action of the plaintiff. Defendant argues that she owed no legal duty to warn the party goers of the dangers of using the dock because she was not the owner of the dock. See brief of defendant Shirley McLaughlin in support for her motion for summary judgment at 3. Correspondingly, defendant argues, plaintiff is unable to establish a cause of action against the late defendant McLaughlin.

Plaintiff argues that the doctrine of the law of the case governs the issue presented in defendant Shirley McLaughlin's motion for summary judgment, as Judge Corbett denied a previously-filed motion for summary judgment filed by defendant, the late Shirley McLaughlin, by memorandum and order dated April 17, 2003.

In this April 17, 2003 memorandum and order, Judge Corbett stated, "Defendant, Shirley McLaughlin, also filed a motion for summary judgment claiming the plaintiff's complaint is limited to negligence against her on the basis that she owed, maintained, and/or controlled the dock that caused plaintiff's injury." See memorandum and order of Judge Corbett of 4/17/03 at 3. The memorandum further stated, "Plaintiff also maintains it was reasonably foreseeable for McLaughlin to know that her guests, including plaintiff, could or would dive from the dock, especially if the guests were not instructed to the contrary."

Considered in light of this previous motion for summary judgment and considering that the Pennsylvania Rules of Civil Procedure governing summary judgment motions do not allow for the filing of serial summary judgment motions, and our corresponding decision, we find that the doctrine of the law of the case indeed governs the motion for summary judgment sub judice, especially since the previously-filed motion for summary judgment argued that the claims against her were limited to negligence. An appropriate order follows.

## ORDER

And now, October 24, 2007, this court finds:

(1) Plaintiff's motion in limine to preclude evidence of alcohol consumption and/or blood alcohol level is denied;

(2) Plaintiff's motion in limine to preclude evidence that plaintiff was a trespasser is denied;

(3) Defendant the late Shirley McLaughlin's pretrial motion to exclude testimony regarding statements purported to be made, or not made, by defendant, the late Shirley McLaughlin, pursuant to 42 Pa.C.S. §5930 (surviving party as a witness) is denied;

(4) Defendant Shirley McLaughlin's motion for summary judgment is denied.