THOMPSON, Presiding Judge.
*863 In this action regarding a motor-vehicle collision, Larry Carter appeals from a judgment of the Bessemer Division of the Jefferson Circuit Court ("the trial court") determining, among other things, that Daniel Keith Haynes was entitled to a judgment as a matter of law as to Carter's claim of wantonness and the issue of punitive damages. Specifically, Carter asserts that the trial court improperly excluded evidence from which the jury could have inferred that Haynes was liable for wanton conduct.
The record indicates the following. On March 6, 2015, Haynes was driving a Honda Civic automobile that collided with the back end of Carter's pickup truck. At the trial, Haynes admitted that he was responsible for the accident. He testified that the collision occurred when he was talking to his girlfriend, a passenger in the automobile, and looked away from the road. He said that, when he looked back, there were vehicles stopped in front of him, and, he said, he did not have time to stop before hitting Carter's truck. Haynes said that he hit Carter's truck hard enough that his vehicle went under Carter's truck.
To prove his claim of wantonness against Haynes, which would enable Carter to receive punitive damages, Carter sought to introduce evidence indicating that Haynes had used methadone and marijuana on the morning of the day of the accident. Haynes had filed a motion in limine to preclude the introduction of such evidence. Initially, the trial court denied Haynes's motion, agreeing with Carter's contention that "the jury could reasonably infer impairment and intoxication based on how this wreck happened."
However, before testimony began, the matter of whether Carter should be able to introduce evidence of Haynes's drug use was discussed again. Haynes argued that, because of the six- to seven-hour lapse between the time the methadone and marijuana were used and the accident, coupled with the absence of evidence indicating that Haynes was impaired when the accident occurred and the absence of expert testimony regarding the expected effects of the drugs in a man of Haynes's size over a certain time, the admission of evidence of Haynes's drug use would be more prejudicial than probative or relevant. Haynes also pointed out, and Carter agreed, that, to be entitled to punitive damages, Carter would have to prove wanton conduct by clear and convincing evidence.
In making his offer of proof to the trial court (out of the jury's presence), Carter elicited the following evidence. Haynes said that he had been addicted to opioids and received daily treatment at a methadone clinic. On the morning of the day of the accident, Haynes said, he received his treatment at between 9:30 and 10:00 a.m. He went home and then smoked marijuana from a bong at about 11:00 a.m. He acknowledged that he "got high off the marijuana." He also testified that, although the physicians at the methadone clinic had instructed him not to use illegal drugs while he was taking methadone, he had never experienced any side effects from mixing methadone and marijuana. Haynes also candidly told the court that he knew that driving while impaired was dangerous, and he consciously decided to drive his vehicle the day of the collision.
However, Haynes said, he was not impaired at the time he drove. About six hours after smoking the marijuana, Haynes said, he was driving to work. The accident occurred at approximately 5:00 p.m. He testified that the effects of the drugs were gone by that time and that he was "totally sober" at the time of the accident.
*864 The trial court reconsidered its previous ruling to deny the motion in limine. In doing so, the trial judge said: "I'm trying to listen to what you have and trying to glean some sense of what evidence do you have to show that [Haynes] was impaired. I'm not really finding any in my mind." The trial judge also noted: "All evidence is prejudicial, but this is highly prejudicial to say someone has abused drugs by driving and then there's an accident." The trial judge ultimately granted Haynes's motion in limine, stating: "[I]f there's not going to be any evidence or any testimony as to the impairment of this defendant while driving. If there's going to be nothing regarding that, I don't see where I can allow that in."
After the trial, the trial court entered a judgment as a matter of law in favor of Carter on the claim of negligence and in favor of Haynes on the claim of wantonness and the issue of punitive damages. It also entered a judgment on the jury's verdict awarding Carter damages of $28,284.41, plus court costs. On October 26, 2017, Carter filed a motion for a new trial in which he argued that the trial court had improperly excluded Haynes's admission that he had used methadone and marijuana on the day of the accident. After a hearing on the issue, the trial court entered an order denying the motion on November 16, 2017. Carter filed a timely notice of appeal on December 28, 2017.
On appeal, Carter contends that the trial court erred in excluding evidence of Haynes's drug use on the day of the accident.
" ' "[T]he trial court has great discretion in determining whether evidence ... is relevant and whether it should be admitted or excluded." Sweeney v. Purvis, 665 So.2d 926, 930 (Ala. 1995). When evidentiary rulings of the trial court are reviewed on appeal, "rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion." Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 32 (Ala. 1998), citing Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165 (Ala. 1991).'
" Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 71 (Ala. 2001)."
Van Voorst v. Federal Express Corp., 16 So.3d 86, 92 (Ala. 2008).
Carter contends that the trial court improperly excluded evidence of Haynes's drug use earlier in the day based on Haynes's argument that Carter was required to offer expert testimony as to the effects of the drugs over time, based on the factors present in this case, such as Haynes's size, the amount of marijuana smoked, Haynes's tolerance for the drugs, and the like. However, in granting Haynes's motion in limine, the trial court did not mention the need for expert testimony. Instead, the trial court found that Carter had no evidence to present demonstrating that Haynes was impaired at the time of the accident and, therefore, that evidence of Haynes's drug use six to seven hours before the accident was unduly and unfairly prejudicial.
Rule 403, Ala. R. Evid., provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
"Mere prejudice is not a basis for exclusion under Rule 403, because evidence can be harmful, yet not unfairly prejudicial. State v. Parker, 740 So.2d 421 (Ala. Crim. App. 1996), reversed on other *865 grounds, 740 So.2d 432 (Ala. 1999). The proper test for determining whether relevant evidence has been properly excluded under Rule 403 is to determine whether 'its probative value is substantially outweighed by the danger of unfair prejudice.' (Emphasis added.) McElroy's Alabama Evidence clarifies the Rule 403 standard by stating: 'This principle does not empower the trial judge to exclude evidence simply because it is prejudicial or because its prejudice outweighs its probative value. Rather, exclusion is merited only when the prejudice substantially outweighs the probative value.' Charles W. Gamble, McElroy's Alabama Evidence, § 21.01(4) (5th ed. 1996) (footnotes omitted) (emphasis original).
" 'Unfair prejudice' under Rule 403 has been defined as something more than simple damage to an opponent's case. Dealto v. State, 677 So.2d 1236 (Ala. Crim. App. 1995). A litigant's case is always damaged by evidence that is contrary to his or her contention, but damage caused in that manner does not rise to the level of 'unfair prejudice' and cannot alone be cause for exclusion. Jackson v. State, 674 So.2d 1318 (Ala. Crim. App. 1993), reversed in part on other grounds, 674 So.2d 1365 (Ala. 1994). 'Prejudice is "unfair" if [it] has "an undue tendency to suggest decision on an improper basis." ' Gipson v. Younes, 724 So.2d 530, 532 (Ala. Civ. App. 1998), quoting Fed. R. Evid. 403 (Advisory Committee Notes 1972). See, also, Rule 403, Ala. R. Evid."
Ex parte Vincent, 770 So.2d 92, 95-96 (Ala. 1999). Moreover, "[t]he decision to admit or to exclude evidence is within the discretion of the trial judge, and we will not reverse such a decision absent an abuse of discretion." City of Birmingham v. Moore, 631 So.2d 972, 974 (Ala. 1994).
As was noted during the arguments presented to the trial court, there was no evidence from lay witnesses that would show that Haynes was driving erratically before the accident, the police officer who responded to the scene of the accident did not note signs that Haynes was impaired at the time of the accident, and Haynes was not arrested for driving under the influence.
Carter maintains that Haynes's admission of voluntary drug use earlier in the day, coupled with the accident itself, constitutes evidence from which the jury could find that he was impaired at the time of the accident. Carter cites Thomas v. Heard, 256 So.3d 644 (Ala. 2017), in support of his argument that the issue of wantonness should have gone to a jury because, he explains, evidence of Haynes's "voluntary intoxication" rebuts the presumption set forth in Thomas that a motorist "would not engage in activity that would knowingly result in harm to himself." Id. at 658 (opinion on application for rehearing).
In Thomas, our supreme court noted that, in Ex parte Essary, 992 So.2d 5, 12 (Ala. 2007), the court had indicated that the presumption that a motorist would not engage in activity that would knowingly result in harm to himself "could be rebutted if there were substantial evidence that the motorist was not in possession of his 'normal faculties' as a result of 'voluntary intoxication' such that he was indifferent to the risk of injury to himself." Thomas, 256 So. 3d at 658 (opinion on application for rehearing). However, unlike in this case, in Thomas there was evidence indicating that Thomas, the driver, "was not in possession of his 'normal faculties' " at the time of the accident. Id. The Thomas court explained that
"[t]here is evidence indicating that Thomas drank at least one 'tallboy' beer *866 and that he took a Seroquel pill before leaving Foster's house [approximately 20 minutes before the accident]. There was testimony presented that Seroquel causes drowsiness and that that effect would be exacerbated by alcohol. There was also evidence presented indicating that Thomas drank more than one beer. In fact, the evidence indicates that Thomas's blood-alcohol concentration 'would have been somewhere between a .05 grams percent and a .06 grams percent.' The evidence also indicates that witnesses smelled alcohol in the area of Thomas's vehicle immediately after the accident. Dr. Kalin testified as to the effects a person with a blood-alcohol concentration of .05% to .06% may experience. Dr. Kalin testified that a person with a blood-alcohol concentration of .05% to .06% may be 'more prone to risky activity'; may have 'some fine motor skill problems, how many things can you juggle at one time'; and 'may experience some visual acuity problems,' including potential loss of peripheral vision. However, Dr. Kalin testified that there was no evidence indicating that Thomas was actually experiencing these effects. Further, Thomas explicitly testified that he was not impaired when he left Foster's house.
"Viewing these facts in a light most favorable to the Heards and Wells, as we must, there is substantial evidence that Thomas drove his vehicle into the intersection without stopping at the stop sign regulating traffic on County Road 41, and that his driving so caused the accident. There is substantial evidence that Thomas drove his vehicle while he had a blood-alcohol concentration of .05% to .06%. There is also substantial evidence from which the jury could infer that, while Thomas was driving his vehicle with a blood-alcohol concentration of .05% to .06%, Thomas was experiencing the above-mentioned effects testified to by Dr. Kalin."
Thomas, 256 So. 3d at 657 (opinion on application for rehearing).
Furthermore, the Thomas court continued:
"Dr. Kalin testified to the following effect, among others, that Thomas was potentially experiencing as a result of his voluntary consumption of alcohol:
" 'Your judgment is going to be a problem in what you see, what you perceive, what you think, what you know. That's all impaired even by low levels of ethanol. That's what the buzz is, the buzz is something that makes you care less about your circumstances than you probably otherwise should.'
"This constitutes substantial evidence from which a jury could infer that Thomas was not in possession of his 'normal faculties' as a result of voluntary intoxication such that he was indifferent to the risk of injury to himself. Or, as alternatively stated by this Court in Roberts v. Brown, 384 So.2d 1047, 1051 (Ala. 1980), Thomas 'voluntarily created the conditions which led to the accident' by his consumption of alcohol. Accordingly, we do not find convincing Thomas's argument that the Heards and Wells failed to present substantial evidence of wantonness; there was substantial evidence from which the jury could have reasonably inferred that Thomas was not in possession of his normal faculties at the time of the accident as the result of his voluntary consumption of alcohol and at least one prescription drug."
Thomas, 256 So. 3d at 658 (opinion on application for rehearing).
Thomas actually strengthens Haynes's position rather than Carter's. In that case, *867 Thomas consumed the beer and a Seroquel pill about 20 minutes before the accident occurred, unlike the 6 to 7 hour delay between Haynes's drug use and the accident in this case. Furthermore, there was no evidence presented in this case regarding the effects one could expect to find in Haynes six to seven hours after he consumed the drugs at issue. Likewise, as mentioned, there was no indicia of intoxication on Haynes's part at the time of the accident, unlike in Thomas, where, at the time of the accident, Thomas's blood-alcohol level measured between .05% and .06% and there was smell of alcohol at the scene of the accident. In other words, in Thomas there was evidence indicating that the driver was impaired at the time of the accident. Without some similar indication of Haynes's impairment, however, a fact-finder would merely be speculating that his drug use earlier in the day was the proximate cause of the accident.
Our research has revealed no Alabama caselaw directly on point. A Pennsylvania appellate court has addressed the question of the propriety of admitting evidence of use of a controlled substance to prove wrongful conduct when there has been no other evidence of impairment, explaining:
"Generally, the mere evidence of a party's consumption of alcohol or controlled substance is inadmissible to prove recklessness or carelessness of the party, unless it is established that the party was intoxicated and physically impaired at the time of the accident. Whyte v. Robinson, 421 Pa. Super. 33, 617 A.2d 380 (1992) ; Hawthorne v. Dravo Corp., Keystone Division, 352 Pa. Super. 359, 508 A.2d 298 (1986), appeal denied, 514 Pa. 617, 521 A.2d 932 (1987). Thus, any evidence tending to establish intoxication of a pedestrian is inadmissible, unless it is also proven that the pedestrian was unfit to cross the street due to physical impairment resulting from intoxication; the intoxication and physical impairment may be established by circumstantial evidence, such as 'evidence that the injured party was staggering or had liquor on his breath.' Kriner v. McDonald, 223 Pa. Super. 531, 302 A.2d 392, 394 (1973)."
Chicchi v. Southeastern Pennsylvania Transp. Auth., 727 A.2d 604, 607 (Pa. Commw. Ct. 1999).
We agree with the reasoning of the Pennsylvania appellate court. There is no evidence of a causal relationship between the accident and Haynes's drug use at least six hours before the accident, nor is there any evidence tending to show that Haynes was impaired at the time of the accident. We disagree with Carter that the accident itself gives rise to an inference that Haynes was impaired at the time of the accident. Without evidence indicating that Haynes was impaired at or near the time of the accident, we cannot say that the trial court abused its discretion in excluding the evidence of Haynes's use of marijuana and methadone on the ground that it was unduly or unfairly prejudicial to Haynes.
Because we hold that the trial court did not abuse its discretion in excluding the evidence at issue, we pretermit discussion of Carter's contention that the exclusion of the evidence injuriously affected his substantial rights, i.e., that the exclusion improperly prevented him from receiving punitive damages in this case.
For the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.